IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **TIMOTHY O'TOOLE**<br>3933 East Tumbleweed Dr.,<br>Camp Verde, Arizona 863222 | *<br><br>* | |
| Plaintiff, | * | |
| v. | * | Civil Action No. _____ |
| **DIXIE CONSTRUCTION COMPANY, INC.,**<br>260 Hopewell Rd.<br>Churchville, Maryland 21028 | *<br><br>*<br><br>* | |
| SERVE ON: | * | |
| **ALBERT J A YOUNG**<br>**200 S. MAIN STREET**<br>**BEL AIR MD 21014** | *<br><br>* | |
| Defendant. | *<br>* | |

\*         \*         \*         \*         \*         \*         \*

**COMPLAINT**

Plaintiff, Timothy O'Toole ("Mr. O'Toole") by and through his undersigned counsel, hereby makes this Complaint against his former employer, Dixie Construction Company, Inc., d/b/a DXI Construction ("Dixie"). Mr. O'Toole asserts claims for discrimination on the basis of sex pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e ("Title VII"), sex and marital status pursuant to the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.*, disability discrimination pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA") and FEPA, age discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623 (the "ADEA") and FEPA, and retaliation in violation of the Family Medical Leave Act, 29

1

U.S.C. § 2601 *et seq*. (the "FMLA"), Title VII, the ADA, ADEA, and FEPA.  Mr. O'Toole seeks declaratory and injunctive relief, an award of compensatory damages, and an award of attorney's fees and costs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this action asserts violations of rights secured by the laws of the United States, specifically, Title VII and the ADA as well as under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Mr. O'Toole's claims arising under Title 20 of the State Government Article of the Maryland Annotated Code because Mr. O'Toole's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

4. Prior to bringing this action, Mr. O'Toole timely filed an administrative charge of discrimination with the Maryland Commission of Civil Rights ("MCCR") and cross-filed with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex, marital status, and disability, as well as retaliation.  Over two-hundred and forty (240) days have passed since the filing of Mr. O'Toole's Charge, he has requested a notice of right of right to sue, and there is no indication that the MCCR is continuing to investigate the charge.  Accordingly, Mr. O'Toole is entitled to a notice of right to sue.  *See Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019); *Gardner v. Maryland Mass Transit Admin.*, No. CV JKB-

18-365, 2018 WL 2193692, at *4 (D. Md. May 14, 2018); *Richardson v. Maryland Transit Admin.*, No. CV RDB-18-0884, 2019 WL 1002597, at *5 (D. Md. Mar. 1, 2019).

## PARTIES

5. At all times relevant, Mr. O'Toole (a disabled, separated, male, over 40 years of age) was employed as an IT Manager with Dixie, until his unlawful termination on December 20, 2018.

6. Dixie is a construction company with locations in Maryland, Delaware, and Virginia. Dixie's principal address in Maryland is 260 Hopewell Rd., Churchville, MD 21028.

## FACTS COMMON TO ALL COUNTS

7. Mr. O'Toole began his employment with Dixie on or about September, 2016.

8. During the relevant period (i.e., June 18, 2018 – December 20, 2018), he was employed as the IT manager.

9. Mr. O'Toole's immediate supervisor was A.J. Verdecchia (Male, married, non-disabled).

10. Mr. O'Toole's work performance was outstanding.

11. From on or about June 18, 2018 to on or about July 28, 2018, Craig Nicholson (Male, Married, Non-Disabled), Foreman, and J.R. Robinson (Male, Single, Non-Disabled), Truck Manager, spread false and malicious rumors amongst Dixie staff that Mr. O'Toole engaged in sexual relations with Amy Jacobs (Female, Single, Non-disabled), Dixie's HR Director, because they saw her give Mr. O'Toole a ride after work on or about June 15, 2018. It should be noted that Mr. O'Toole was having car problems that day, and, as a result, Ms. Jacobs willingly gave Mr. O'Toole a ride.

12. Mr. Nicholson and Mr. Robinson constantly made derogatory sexual remarks to Mr. O'Toole on the job site such as "Good job having sex with the HR lady" and "Are her tits real?"

13. On or about June 19, 2018, Mr. O'Toole attempted to file an internal sexual harassment complaint with Ms. Jacobs regarding the false and derogatory sexual remarks that Mr. Nicholson and Mr. Robinson were making to and about Mr. O'Toole.

14. However, Ms. Jacobs minimized Mr. O'Toole's complaint and responded: "Well, you know, boys will be boys" and "Well, you know it's a boys club."

15. On or about July 28, 2018, in an attempt to locate Mr. O'Toole and ask him to come in early to work, Mr. Robinson texted Pat Dixon (Male, Married, Non-disabled), Dixie's Vice President of Operations, and falsely accused Mr. O'Toole of living with Ms. Jacobs.

16. On that same date, when Mr. O'Toole arrived to work, he disclosed to Mr. Dixon that he did not appreciate the nature of Mr. Robinson's and Mr. Dixon's text messages.

17. Mr. Dixon responded: "Then why the fuck were you in her car then?"

18. While Mr. O'Toole attempted to explain to Mr. Dixon that Ms. Jacobs gave him a ride because his car was broken down, Mr. Dixon abruptly began to interrogate Mr. O'Toole about his marital status, asking "they why the fuck did you leave your wife?"

19. In response, Mr. O'Toole became visibly upset and disclosed to Mr. Dixon that he possess a disability and that due to his disability-related health issues, he was unable to have intercourse and that this particular disability-related health issue directly led to his separation with his wife.

20. In response, Mr. Dixon slammed his hand on the desk and angrily continued to interrogate Mr. O'Toole, asking where he lived and stating not to disclose the aforementioned disability-related health issues to his workplace harassers because "they will never let [him] live it down."

21. On or about July 28, 2018, Mr. O'Toole attempted to file a second internal sexual harassment complaint about the aforementioned conduct with Ms. Jacobs.

22. However, she responded "What do you want me to do about it? And "We'll talk about it on Monday" (i.e., 07/31/2018), but Ms. Jacobs never followed up with Mr. O'Toole about his complaints and never conducted an investigation.

23. On or about July 30, 2018, Mr. Dixon continued to harass Mr. O'Toole based on his sex, disability, and marital status by making crude and discriminatory jokes about him such as recommending that "I get together with an Amish or Mexican woman" in close proximity to his home because "they just cook and clean and don't need sex."

24. On or about July 31, 2018, Mr. Dixon falsely accused Mr. O'Toole of not being at the jobsite that morning.

25. Later that same morning, Mr. O'Toole filed a complaint via text message to Mr. Dixon and Mr. Verdecchia that he did not appreciate Mr. Dixon's continuous harassment.

26. In further discrimination and retaliation for Mr. O'Toole's protected activity of complaining to his superiors about the aforementioned harassment, on that same date at approximately 12:10 PM, Mr. Dixon verbally reprimanded Mr. O'Toole for opposing his discriminatory harassment.

27. As a result of the discrimination and harassment Mr. O'Toole was subjected to by Dixie during June and July of 2018, he suffered extreme emotional distress and mental anguish which manifested in severe anxiety, panic attacks, and depression, which substantially impaired his ability to perform the major life activities of caring for himself, sleeping, concentrating, and working, and culminated in Mr. O'Toole undergoing medical treatment and mental health counselling.

28. On or about August 29, 2018 Mr. O'Toole was diagnosed with severe anxiety and depression by his doctor.

29. Beginning on August 31, 2018, Mr. O'Toole was unable to work due to his disability, and he went on unpaid FMLA leave from August 31, 2018 to November 22, 2018, during which time he underwent medical treatment by his health-care providers.

30. Prior to the expiration of Mr. O'Toole's FMLA leave, Dixie posted a job advertisement for the position of IT Director, which carried with it the same duties and responsibilities of Mr. O'Toole's job as IT Manager.

31. Dixie posted the job advertisement in an effort to eliminate Mr. O'Toole's position while he was out on job-protected FMLA leave.

32. On September 25, 2018, Mr. O'Toole filed a Charge of Discrimination against Dixie with the MCCR, which was cross-filled with the EEOC, alleging discrimination on the basis of sex, marital status, and disability, as well as retaliation.

33. Mr. O'Toole's doctor determined that he was unable to return to work for medical reasons from October, 27, 2018 through December 9, 2018 and medically cleared him to return to work without restrictions on December 10, 2018.

34. Due to the expiration of his FMLA leave on November 22, 2018, Dixie put Mr. O'Toole on unpaid personal leave through December 9, 2018.

35. Mr. O'Toole returned to work on December 10, 2018.

36. Since his return to work, Mr. O'Toole was subjected to additional discrimination, harassment, and retaliation because he took FMLA leave, requested accommodations, and filed the initial Charge of Discrimination.

37. Specifically, in the morning of his first day back at work, Mr. O'Toole had a meeting with Mr. Verdecchia during which Mr. O'Toole explained that Ms. Jacobs had assured him that she would address his earlier complaints about harassment and discrimination, and he took the opportunity to once again share his complaint to Mr. Verdecchia.

38. Rather than take any steps to address Mr. O'Toole's complaints, Mr. Verdecchia exerted pressure upon Mr. O'Toole in an attempt to get him to withdraw his charge of discrimination, and he questioned Mr. O'Toole as to what he was hoping to gain from his complaints and from filing a charge of discrimination against the company. Mr. Verdecchia told Mr. O'Toole that Shawn Pyle, the President and CEO of Dixie, was "pissed off" that he filed a charge of discrimination against the company and that they did not know what Mr. O'Toole's intentions were with respect to his complaints and his charge of discrimination, which, according to Mr. Verdecchia, posed a real problem for the company.

39. Mr. Verdecchia asked Mr. O'Toole if they were really going to meet down in Baltimore in January (i.e., for the fact-finding conference scheduled for January 31, 2019 at MCCR) and questioned whether Mr. O'Toole was going to drop his complaint.

40. Beyond the harassment and intimidation Mr. O'Toole was subjected to in retaliation for his earlier complaints and for filing a charge of discrimination, Mr. O'Toole was isolated and ostracized by his supervisors and executives of Dixie, including Mr. Pyle, which impeded his ability to effectively complete the duties and responsibilities associated with his position and which caused him further mental and emotional distress.

41. Since Mr. O'Toole's return to work, his harassment complaints to Ms. Jacobs and Mr. Verdecchia remained unresolved and unaddressed, and the hostile work environment to which he was subjected did not cease.

42. Instead, Mr. Verdecchia and Ms. Jacobs counselled Mr. O'Toole regarding unsubstantiated and illegitimate job performance concerns, which were simply a pretext for further discrimination and harassment on the basis of his sex, marital status, age, and disability.

43. No steps were taken by Dixie to end the hostile work environment Mr. O'Toole was subjected to and prevent its recurrence.

44. On the morning of December 20, 2018, Mr. O'Toole was called into a meeting with Mr. Verdecchia and Ms. Jacobs as well as outside counsel for Dixie, who participated in the meeting by telephone.

45. Mr. Verdecchia told Mr. O'Toole that Dixie didn't know what his intent was — referring to the charge of discrimination he filed, and told Mr. O'Toole that he "need[s] to leave."

46. Mr. Verdecchia then terminated Mr. O'Toole's employment.

47. Next, Mr. O'Toole was presented with a severance agreement and release and was subjected to intense pressure to sign it at that very moment. Mr. O'Toole asked Ms. Jacobs if he could take time to review the agreement, and she said that he could only have ten minutes to review it – far too little time to be able to review the agreement. Mr. O'Toole was not advised that he could seek counsel or that he had any more time to consider the agreement. The severance agreement was presented as a "take it or leave it" deal despite the fact that Dixie knew that Mr. O'Toole was over the age of 40 and, under the provisions of the Older Workers Benefit Protection Act, was entitled to 21 days to consider the severance and release agreement

48. Dixie terminated Mr. O'Toole's employment in retaliation for his complaints about workplace discrimination and harassment he suffered immediately prior to and after going out on FMLA leave, in retaliation for taking FMLA leave and seeking reasonable accommodations for a disability, and in retaliation for filing his initial Charge of Discrimination.

49. Furthermore, Dixie retaliated against Mr. O'Toole and interfered with his non-waivable protected rights to file charges and participate in investigations with the EEOC and MCCR by coercing him to sign a release which would waive his right to pursue the pending charge of discrimination and pressured Mr. O'Toole to give up his rights to receive a knowing and voluntary waiver in violation of the Older Workers Benefit Protection Act.

50. Any reason that Dixie gives for Mr. O'Toole's termination is pretextual and the real reason for Mr. O'Toole's termination was discrimination on the basis of sex, disability, marital status, and age, as well as retaliation for opposing discriminatory activity in the workplace as well as unlawful harassment, for seeking reasonable accommodations for his disability, for seeking FMLA leave, and for filing his initial Charge of Discrimination.

## COUNT I
### (Sex Discrimination & Hostile Work Environment Under Title VII)

51. Mr. O'Toole re-alleges the allegations stated in Paragraphs 1 through 50 above as if fully set forth herein.

52. Mr. O'Toole is male and is therefore a member of the class protected by Title VII.

53. Dixie, through its agents, including employees and supervisors/management level personnel, subjected Mr. O'Toole to a hostile working environment and discrimination based on his sex and sex stereotyping, as detailed above.

54. The harassment was severe and pervasive based on the nature of the harassment, which included repeated egregious and sexually lewd and vulgar statements made by numerous employees and supervisors towards and about Mr. O'Toole based on his sex, sex stereotyping and gender nonconformity, numerous management and supervisory level employees ostracizing and preventing Mr. O'Toole from completing his job duties and which substantially interfered with the terms, conditions, and privileges of Mr. O'Toole's

employment, and unwarranted disciplinary actions taken in response to Mr. O'Toole's complaints.

55. Mr. O'Toole considered the aforementioned conduct to be discriminatory, and reported said discriminatory conduct both verbally and in writing to numerous management level employees of Dixie, including Human Resources.

56. Accordingly, Dixie was fully aware of the hostile work environment.

57. However, despite Mr. O'Toole's numerous complaints of harassment and discrimination, Dixie failed to conduct an investigation or otherwise cause the discriminatory conduct to cease, and management level and supervisory level employees of Dixie not only failed to take corrective action in response to Mr. O'Toole's complaint, but personally participated in the harassment of Mr. O'Toole.

58. Rather than cause the discriminatory conduct to cease, Dixie terminated Mr. O'Toole's employment in retaliation for making internal complaints of sexual harassment and for filing a charge of discrimination, both of which are protected acts.

59. As a direct result of Dixie's unlawful discriminatory employment practices, Mr. O'Toole sustained severe emotional distress, embarrassment, humiliation, loss of self-esteem, post-traumatic stress, as well as financial harm, including loss of employment, loss of benefits, loss of future earning power, and other financial hardships.

WHEREFORE, Mr. O'Toole requests that this Court enter judgment against Dixie and award him appropriate legal and equitable relief, including, but not limited to, back pay, front pay, restitution of employment benefits, compensatory and punitive damages, including emotional distress damages, attorneys' fees, and costs reasonably incurred in prosecuting this action.

## COUNT II
### (Retaliation in Violation of Title VII)

60. Mr. O'Toole incorporates by reference paragraphs 1 through 59 as if fully set forth herein.

61. Mr. O'Toole engaged in protected activities by making internal reports of sexual harassment to Dixie's management and supervisory employees as well as Human Resources.

62. Shortly after making internal reports of sexual harassment, Mr. O'Toole was subjected to further abuse and harassment by Dixie's employees and management.

63. Mr. O'Toole filed a charge of discrimination on September 25, 2018 alleging, in relevant part, sex discrimination.

64. Shortly after filing his charge of discrimination, Mr. O'Toole was subjected to unwarranted disciplinary actions, harassment, and retaliation directly related to his protected act of previously filing a charge of discrimination.

65. Dixie management and supervisory employees unlawfully pressured Mr. O'Toole to withdraw his charge of discrimination and subjected him to intimidation tactics to influence him to drop the charge.

66. Less than three months after filing a charge of discrimination, Dixie terminated Mr. O'Toole's employment in direct retaliation for filing his charge.

67. By engaging in the foregoing conduct, Dixie unlawfully retaliated against Mr. O'Toole in violation of Title VII.

WHEREFORE, Mr. O'Toole requests that this Court enter judgment against Dixie and award him appropriate legal and equitable relief, including, but not limited to, back pay front pay, restitution of employment benefits, compensatory and punitive damages, including emotional distress damages, attorneys' fees, and costs reasonably incurred in prosecuting this action.

## COUNT III
### (Retaliation in Violation of the ADA)

68. Mr. O'Toole incorporates by reference paragraphs 1 through 67 as if fully set forth herein.

69. Mr. O'Toole engaged in protected activities by making requests for reasonable accommodations for his disability of severe anxiety and depression.

70. Mr. O'Toole filed a charge of discrimination on September 25, 2018 alleging, in relevant part, disability discrimination.

71. Shortly after filing his charge of discrimination, Mr. O'Toole was subjected to unwarranted disciplinary actions, harassment, and retaliation directly related to his protected act of previously filing a charge of discrimination.

72. Dixie management and supervisory employees unlawfully pressured Mr. O'Toole to withdraw his charge of discrimination and subjected him to intimidation tactics to influence him to drop the charge.

73. Less than three months after filing a charge of discrimination, Dixie terminated Mr. O'Toole's employment in direct retaliation for filing his charge.

74. By engaging in the foregoing conduct, Dixie unlawfully retaliated against Mr. O'Toole in violation of the ADA

WHEREFORE, Mr. O'Toole requests that this Court enter judgment against Dixie and award him appropriate legal and equitable relief, including, but not limited to, back pay, front pay, restitution of employment benefits, compensatory and punitive damages, including emotional distress damages, attorneys' fees, and costs reasonably incurred in prosecuting this action.

## COUNT IV
### (Retaliation and Interference in Violation of the FMLA)

75. Mr. O'Toole incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76. Mr. O'Toole engaged in protected activities by taking FMLA leave due to his serious health condition of severe anxiety and depression.

77. During Mr. O'Toole's FMLA leave, Dixie advertised for Mr. O'Toole's position in an attempt to replace him while he was out on FMLA leave, which unlawfully interfered with Mr. O'Toole's FMLA rights.

78. Shortly after returning from FMLA leave, Dixie terminated Mr. O'Toole's employment in retaliation for his protected act of taking FMLA leave.

79. By engaging in the foregoing conduct, Dixie unlawfully retaliated against Mr. O'Toole in violation of FMLA.

WHEREFORE, Mr. O'Toole requests that this Court enter judgment against Dixie and award him appropriate legal and equitable relief, including, but not limited to, back pay, front pay, restitution of employment benefits, liquidated damages, , attorneys' fees, and costs reasonably incurred in prosecuting this action.

## COUNT V
### (Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 601 *et seq.*,)

80. Mr. O'Toole re-alleges the allegations stated in Paragraphs 1 through 79 above as if fully set forth herein.

81. Mr. O'Toole is an "employee" within the meaning of the ADEA, and belongs to the class of employees protected under the ADEA—namely, employees over the age of 40.

82. Dixie is an "employer" within the meaning of the ADEA.

83. At the time of his discharge, Mr. O'Toole was capable of performing at a level that met Dixie's legitimate expectations.

84. Dixie terminated Mr. O'Toole, an older and more highly compensated employee, rather than younger, less compensated employees who were similarly situated to Mr. O'Toole, and during the termination meeting, Dixie's management personnel pressured Mr. O'Toole to sign a release agreement in violation of the Older Workers Benefit Protection Act.

85. Dixie intentionally discriminated against Mr. O'Toole by terminating his employment rather than similarly situated younger employees.

86. Dixie's actions in terminating Mr. O'Toole's employment were discriminatory under the ADEA.

87. Dixie, by and through its agents, willfully violated Mr. O'Toole's federally protected rights under the ADEA. Mr. O'Toole is therefore entitled to punitive damages.

WHEREFORE, Mr. O'Toole requests that this Court enter judgment against Dixie and award him appropriate legal and equitable relief, including, but not limited to, back pay, front pay, restitution of employment benefits, liquidated damages, attorneys' fees, and costs reasonably incurred in prosecuting this action.

## COUNT VI

**(Violation of Title 20 of the State Government Article of the Annotated Code of Maryland)**
**(Sex, Disability, and Age Discrimination)**

88. Mr. O'Toole re-alleges the allegations stated in Paragraphs 1 through 87 above as if fully set forth herein.

89. Dixie is an "employer" as defined by Title 20 of the State Government Article of the Annotated Code of Maryland, codified at Md. Code Ann., State Gov't § 20-601 *et seq.* ("Title 20").

90. Title 20 prohibits employers from discriminating against employees on the basis of their sex, disabilities, and age.

91. As further alleged herein, Dixie discriminated against Mr. O'Toole on the basis of his sex, disability, and age in the form of disparate treatment, creating a hostile work environment, and retaliation in violation of Title 20.

WHEREFORE, Mr. O'Toole requests that this Court enter judgment against Dixie and award him appropriate legal and equitable relief, including, but not limited to, back pay, front pay, restitution of employment benefits, compensatory damages and punitive damages, including emotional distress damages, attorneys' fees, and costs reasonably incurred in prosecuting this action.

## COUNT VII

**(Violation of Title 20 of the State Government Article of the Annotated Code of Maryland)**
**(Marital Status Discrimination and Harassment)**

92. Mr. O'Toole re-alleges the allegations stated in Paragraphs 1 through 91 above as if fully set forth herein.

93. Dixie is an "employer" as defined by Title 20 of the State Government Article of the Annotated Code of Maryland, codified at Md. Code Ann., State Gov't § 20-601 *et seq.* ("Title 20").

94. Mr. O'Toole was an "employee" as defined by Title 20.

95. Title 20 prohibits employers from discriminating against employees on the basis of their marital status.

96. Dixie, through its agents, supervisors, managers, and owners, subjected Mr. O'Toole to a hostile working environment and marital status discrimination, as detailed above.

97. The harassment was severe and pervasive based on the nature of the harassment, which included repeated egregious, lewd and vulgar statements made by numerous employees and supervisors towards and about Mr. O'Toole based on his marital status, numerous management and supervisory level employees ostracizing Mr. O'Toole which and prevented Mr. O'Toole from completing his job duties, which substantially interfered with the terms, conditions, and privileges of Mr. O'Toole's employment, and subjecting Mr. O'Toole to unwarranted disciplinary actions taken in response to Mr. O'Toole's complaints.

98. Mr. O'Toole considered the aforementioned conduct to be discriminatory, and reported said discriminatory conduct both verbally and in writing to numerous management level employees of Dixie, including Human Resources.

99. Accordingly, Dixie was fully aware of the hostile work environment

100. However, despite Mr. O'Toole's numerous complaints of discrimination, Dixie failed to conduct an investigation or otherwise cause the discriminatory conduct to cease, and management level and supervisory level employees of Dixie participated in the harassment of Mr. O'Toole.

101. Rather than cause the discriminatory conduct to cease, Dixie terminated Mr. O'Toole's employment in retaliation for making internal complaints of marital status harassment and for filing a charge of discrimination.

102. As a direct result of Dixie's unlawful discriminatory employment practices, Mr. O'Toole sustained severe emotional distress, embarrassment, humiliation, loss of self-esteem, post-

traumatic stress, as well as financial harm, including loss of employment, loss of benefits, loss of future earning power, and other financial hardships.

WHEREFORE, Mr. O'Toole requests that this Court enter judgment against Dixie and award him appropriate legal and equitable relief, including, but not limited to, back pay, front pay, restitution of employment benefits, compensatory and punitive damages, including emotional distress damages, attorneys' fees, and costs reasonably incurred in prosecuting this action.

## **DEMAND FOR A TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. O'Toole demands a trial by jury in this action.

Respectfully submitted,

s/ (filed electronically)

Edmund J. O'Meally
Federal Bar No. 04910
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland 21204
Tele:  (410) 339-6757
Fax:   (410) 832-5654
eomeally@pklaw.com

/s/ (filed electronically)

Adam E. Konstas
Federal Bar No.18957
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland   21204
Tele:  (410) 339-5786
Fax:   (410) 832-5625
akonstas@pklaw.com

**COUNSEL FOR THE PLAINTIFF**

DATE:  JUNE 18, 2020